# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: August 3, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| JARED EASTMAN, | * | |
| | * | |
| Petitioner, | * | No. 18-250V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Final Attorneys Fees' and Costs. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

*M. Clay Ragsdale,* Ragsdale, L.L.C., Birmingham, AL, for petitioner.
*Debra A. Filteau Begley,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On January 12, 2023, Jared Eastman., ("petitioner") filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorneys' Fees ("Fees App.") (ECF No. 41). For the reasons discussed below, the undersigned **GRANTS** petitioner's motion for final attorneys' fees and costs and awards a total of **$116,061.18.**

### I. Procedural History

On February 16, 2018, petitioner filed a petition in the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that as a result of receiving the diphtheria, tetanus, and pertussis vaccination ("DtaP") vaccine on February 18, 2015, he suffered vaccine-induced autoimmune thyroiditis ("Hashimoto's disease") and other contributing

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes. *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

autoimmune conditions such as lupus, a thyroid disorder, peripheral neuropathy, rheumatoid arthritis, seizure disorder, connective tissue disorder, fibromyalgia and possible Chronic inflammatory demyelinating polyneuropathy ("CIDP") that were "caused-in-fact" by the above-stated vaccination(s). Petition (ECF No. 1).

On October 16, 2018, respondent filed an initial status report on respondent's review of the case, in which respondent requested additional medical records and worker's compensation documentation from petitioner before announcing respondent's position to the Court. (ECF No. 12). On February 14, 2019, petitioner filed an expert report from Dr. Leslie J. Dorfman and Dr. Jong W. Lee. *See* Pet. Ex. 30; Pet. Ex. 31. (ECF No. 25). Both Drs. Dorfman and Lee agreed that petitioner's symptoms could be explained by Hashimoto's thyroiditis, and recommended petitioner should follow-up with a neurologist specializing in seizure disorder to ensure he does not have other diseases. Pet. Ex. 31 at 4.

On July 29, 2019, petitioner filed additional medical records, a statement of completion, and an amended petition. Pet. Ex. 36; Amended Petition ("Amend. Pet.") (ECF No. 35-37). The amended petition noted that petitioner, "is totally disabled and has not worked since his symptoms began shortly after his vaccination." Amend. Pet. at 3. (ECF No. 37). The amendment further clarified petitioner has, "been seen by multiple physicians since 2016, and been diagnosed with peripheral neuropathy, seizure disorder, Hashimoto's disease, Behcet's disease/vasculitis, and rheumatoid arthritis, possible Crohn's Disease, lupus, and fibromyalgia." *Id.*

On September 16, 2019, respondent filed a status report indicating that following the DICP review of the case, respondent intended to contest entitlement and proposed filing a Rule 4(c) report. (ECF No. 39). On October 25, respondent filed his Rule 4(c) report, containing a factual summary of the submitted medical records and argued that petitioner and his experts had not produced a "sound and reliable" medical theory and therefore "a medical theory causally connecting the vaccination and injury cannot be established." Respondent's Report ("Resp. Rept.") at 19.

I convened a status conference on November 25, 2019, and on November 27, 2019, I ordered petitioner to file all outstanding records and a supplemental statement of completion, a second amended petition if appropriate, and a status report proposing further proceedings by January 27, 2020. (ECF No. 43). In the alternative, I ordered petitioner to make an appropriate filing to discontinue his claim by the same deadline. *Id.* Petitioner filed additional medical records on December 6, 2019, and January 27, 2020. Pet. Ex. 37; Pet. Ex. 38. (ECF Nos. 44, 45).

On August 4, 2020, petitioner filed additional medical records, a statement of completion, and an amended petition. (ECF Nos. 52, 53). The amended petition indicated that, starting in August of 2019, petition had undergone reevaluation by specialists at the University of Alabama, and had been diagnosed with Acute Transverse Myelitis temporally associated with his DtaP vaccine. Second Amend. Pet. at 3. (ECF No. 54).

On September 8, 2020, I convened a status conference and ordered petitioner to file a report from Dr. Benesh, petitioner's treating neurologist. (ECF no. 57). Petitioner filed a status

report on January 12, 202, indicating that repeated attempts to contact Dr. Benesh were unsuccessful, and petitioner requested a deadline for an expert report. (ECF No. 59).

On March 30, 2021, petitioner filed additional medical literature and an expert report by Dr. Younger, M.D., an expert in neuromuscular diseases and neuro-epidemiology. Pet. Ex.42. (ECF No. 63). Dr. Younger's work focuses on disorders triggered by infection and autoimmunity. Pet. Ex. 42 at 1. Dr. Younger opined that, "Mr. Eastman developed a form of autoimmune encephalopathy referred to as Hashimoto's Encephalopathy (HE) and sometimes known as Steroid-responsive encephalopathy associated with autoimmune thyroiditis (SREAT) following his DtaP vaccination on 2/18/2015." Pet. Ex. 42 at 4.

Respondent filed an expert report from Dr. Chad Carlson on December 6, 2021. Respondent's Exhibit ("Resp. Ex.") A. (ECF No. 69). Respondent's expert, Dr. Chad Carlson, opined, "petitioner has not provided objective clinical evidence to support a diagnosis of Hashimoto's Encephalopathy. The established diagnostic criteria require the presence of an encephalopathy for which no evidence is provided." *Id.* at 17.

On January 24, 2022, respondent filed a second expert report of Dr. Paul W. Ladenson. Resp. Ex. C. (ECF No. 72). Dr. Ladenson opined that, "even if Hashimoto's encephalopathy does exist and even if Mr. Eastman had it, there is, to this expert's knowledge, not a shred of published clinical, epidemiological, or laboratory evidence that chronic autoimmune thyroiditis and/or Hashimoto's encephalopathy is caused or precipitated by the administration of Tdap with or without other predisposing genetic and/or environmental influence." *Id.*

I convened a status conference on April 26, 2022 where I ordered petitioner to file a status report indicating if petitioner intended to continue pursuing his case in the program, or if he would consider a voluntary dismissal. (ECF No. 74). On September 1, 2022, petitioner filed additional supporting medical literature and a supplemental opinion from Dr. Younger. Pet. Ex. 58; Pet. Ex. 56; Pet. Ex. 60. (ECF No. 78). The supplemental opinion indicated, "the severe and unusual pain and inflammation that Mr. Eastman had immediately following the vaccines is pertinent in that it indicated Mr. Eastman was experiencing a hyperinflammatory reaction that, in his case, persisted and likely initiated [blood-brain barrier] dysfunction and permeability." Pet. Ex. 58 at 4. On October 25, 2022, petitioner filed a status report arguing that the evidence of his encephalopathic symptoms satisfied the diagnostic criteria of Autoimmune Encephalopathy. (ECF No. 80). On November 3, 2022, petitioner was ordered to consult with Dr. Younger as to whether a supplemental report or evaluation at a tertiary care center would assist in understanding petitioner's condition and the causal role of the vaccine. If not, petitioner was instructed to consider voluntary dismissal within thirty days, by December 5, 2022. (ECF No. 81).

On December 6, 2022, petitioner filed a motion to dismiss the case. *See* Motion ("Mot.") to Dismiss (ECF No. 82). The decision dismissing petition was served on parties the same day. (ECF No. 83). On January 12, 2023, petitioner filed a motion for final attorneys' fees. Fees Application ("App.") Ex. A-D (ECF No. 86). Petitioner requested compensation in the total amount of $116,160.68 representing $103,152.50 in attorneys' fees and $13,008.18 in costs. *Id.* at 1. Respondent filed a response to the fees motion on January 26, 2023, stating that

"Respondent is satisfied that the statutory requirements for an award of attorneys' fees and costs are met in this case." Response at 2. (ECF No. 87). Petitioner did not file a reply thereafter.

This matter is now ripe for adjudication.

## II.    Analysis

### A.  General Legal Standard

Under the Vaccine Act, the special master may award reasonable attorneys' fees and costs for a petition that does not result in an award of compensation but was filed in good faith and supported by a reasonable basis. § 300aa–15(e)(1). Whether a claim was brought in good faith and whether rational basis existed are two distinct inquiries. *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 635 (Fed. Cir. 2017).

The subjective good faith inquiry is satisfied when "petitioner honestly believed he ha[d] a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The objective reasonable basis inquiry turns around the "feasibility of the claim" at hand, rather than the likelihood of its success. *Id.* at *6. The evidentiary standard that must be met to satisfy a reasonable basis inquiry is "more than a mere scintilla but less than a preponderance of proof." *Cottingham v. Sec'y of Health & Hum. Servs.,* 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Reasonable basis may cease to exist as further evidence is introduced. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).

In this case, petitioner dismissed the case to avoid expending court resources in further proceedings. I find that petitioner has demonstrated a subjective belief that he had a legitimate claim to compensation, satisfying the good faith standard.

Furthermore, I find petitioner had a reasonable basis to bring this claim up until the time it was dismissed. In this case, the medical facts were quite complex and, at least initially, supported the reasonable belief of a post-vaccination autoimmune condition. Dr. Younger was able to provide some support for that argument. Petitioner presented more than a mere scintilla of objective evidence in the form of expert opinion, satisfying the reasonable basis standard. When petitioner believed reasonable basis ceased to exist, he timely dismissed the case. Accordingly, given petitioner had a reasonable basis to bring this claim up to the point that he requested a timely dismissal, he is entitled to an award of reasonable attorneys' fees and costs.

### B.  Reasonable Attorneys' Fees

Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n. 1. Special masters are given substantial discretion in determining if a petitioner's request is reasonable to achieve a "rough justice." *See Fox v. Vice*, 563 U.S. 826, 838 (2011). The special

master may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99–537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

Petitioner requests a total of $103,152.50 in attorneys' fees. Petitioner requests reimbursement for counsel Mr. M. Clay Ragsdale, Ms. Allison Riley, and paralegals Ms. Amy Johnson and Ms. Anne Burke at the following hourly rates:

| Year | Mr. Ragsdale | Ms. Riley | Ms. Johnson | Ms. Burke |
|---|---|---|---|---|
| 2016 | $385.00 | $250.00 | $135.00 | N/A |
| 2017 | $400.00 | $270.00 | $135.00 | N/A |
| 2018 | $410.00 | $290.00 | $150.00 | N/A |
| 2019 | $420.00 | $305.00 | $150.00 | N/A |
| 2020 | $430.00 | $325.00 | $155.00 | $141.00 |
| 2021 | $450.00 | $350.00 | $170.00 | $150.00 |
| 2022 | $485.00 | $375.00 | $180.00 | $160.00 |

Petitioner's proposed rates for Mr. M. Clay Ragsdale, Ms. Allison Riley, and Ms. Anne Burke are consistent with the Office of Special Masters' Attorneys' Forum Rate Fee Schedule and the range set forth by this Court in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). These rates are also consistent with previous fee decisions awarding forum rates for Ragsdale L.L.C. *See, e.g.*, *Eason v. Sec'y of Health & Human Servs.*, No. 18-406V, 2022 WL 1869353 (Fed. Cl. Spec. Mstr. May 9, 2022); *Brown v. Sec'y of Health & Human Servs.*, No. 17-253V, 2018 WL 5095121 (Fed. Cl. Spec. Mstr. Sept. 6, 2018); *Dobyns v. Sec'y of Health & Human Servs.*, No-19-158V, Doc. No. 45 (Fed. Cl. Spec. Mstr. Sept. 16, 2022). Therefore, the undersigned finds them to be reasonable fees that achieve the "rough justice" guideline set forth by the Supreme Court. *Fox,* 563 U.S. at 838.

However, the 2022 hourly rate petitioner proposes for Ms. Amy Johnson of $180.00 per hour of work performed exceeds the $177.00 maximum paralegal hourly rate set forth in the 2022 Office of Special Masters' Attorneys' Forum Rate Fee Schedule. Accordingly, Ms. Johnson's work in 2022 shall be reimbursed at a rate of $175.00 per hour, consistent with this Court's prior fee decisions. *See Hughes v. Sec'y of Health & Human Servs.*, No. 18-1895V, 2013 WL 2156640 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). This results in a reduction of **$99.50** from petitioner's attorneys' fees request.

### C. Hours Expended

When evaluating fee applications, special masters need not perform a line-by-line evaluation and may instead reply on their own experience to assess reasonableness. *Wasson*, 24 Cl. Ct. 482, 484 (1993). Hours spent performing administrative tasks will not be compensated in the Program. *See e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989); *Kerridge v. Sec'y of Health & Hum. Servs.*, No. 15-852V, 2017 WL 4020523, at *3 (Fed. Cl. Spec. Mstr. July 28, 2017).

Upon review of the submitted billing statement, I find the overall hours spent on this matter appear to be reasonable. The billing entries appear to accurately reflect the work that was performed, and the amount of time spent on each task was adequately documented. Additionally, respondent has not identified any particular entries as being objectionable, and upon review, I do not find any objectionable entries either. Accordingly, petitioner is entitled to **$103,053.00** in attorneys' fees in accordance with the deduction of **$99.50** from Ms. Amy Johnson's paralegal fees.

### A. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). When assessing the reasonableness of expert's fees, special masters may consider the area of expertise; prevailing rates of other experts with similar experience; education and experience; and "the nature, quality, and complexity of the information provided." *Baker v. Sec'y of Health & Human. Servs.*, No. 99-653V, 2005 WL 589431, at *3-5 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).

Petitioners request a total of $13,008.18 in attorneys' costs. Compensation of Dr. Younger, petitioner's primary expert, constitutes $10,750.00 of petitioner's total $11,650.00 expert fee cost. Pet. Ex. C. (ECF No. 86). Dr. Younger has prior experience participating in vaccine litigation cases as an expert in neurological and autoimmune injury. Pet. Ex. A. at 12. (ECF No. 86). He has authored several books, contributed to many peer-reviewed articles, and is a leading public health authority in his area of practice. *Id.* Dr. Younger's $500.00 hourly fee is reasonable considering his experience in the program and expertise in his field. *See Shaver v. Sec'y of Health & Hum. Servs.,* No. 10-515V, 2019 WL 1150526 (Fed. Cl. Spec. Mast. Feb. 22, 2019) (granting Dr. Young's fees in full); *see also Abbott v. Sec'y of Health & Human Servs.*, No. 14-907V, 2019 WL 1856435, (Fed. Cl. Spec. Mstr. Mar. 19, 2019); *Rupert v. Sec'y of Health & Human Servs.*, No. 10-160V, 2014 WL 785256 (Fed. Cl. Spec. Mstr. Feb. 3, 2014); *E.S. v. Sec'y of Health & Human Servs.*, No. 17-480V, 2020 WL 9076620 (Fed. Cl. Spec. Mstr. Nov. 13, 2020).

Neurologist Dr. Jong Lee and radiologist Dr. James Bankston were also consulted by petitioner's counsel to review petitioner's medical records. Pet. Ex. C. (ECF No. 86). Dr. Lee billed $500.00 total for a consultation and Dr. Bankston billed a total of $400.00 for a consultation.

Dr. Jong Lee is an associate professor of neurology at Brigham and Women's Hospital affiliated with Harvard Medical School. Pet. Ex. C. at 7; Pet. Ex. 31 at 28-31. (ECF Nos. 25, 86). Dr. Lee's educational background and area of expertise are comparable to neurology experts who have been awarded $500.00 an hour. *See Allen v. Sec'y of Health & Human Servs.*, No. 11-051V, 2013 WL 5229796, at *2 (Fed. Cl. Spec. Mstr. Aug. 23, 2013) (awarding an expert fee of $500.00 per hour for a neurology expert's services); *see also Lewis v. Sec'y of Health & Human Servs.*, 149 Fed. Cl. 308, 317 (2020) (observing that for neurologists, an hourly rate of $450.00 to $500.00 is standard in the Program).

No CV was filed for Dr. James Bankston. A Google search of Dr. Bankston shows that he completed a fellowship in MRI at Northwestern memorial Hospital in Chicago, Illinois with an emphasis on body and musculoskeletal imaging.[3] Dr. Bankston practices at multiple regional hospitals in the Tuscaloosa Alabama area, as well as at the Radiology Clinic in Tuscaloosa. *See id.* Dr. Bankston's expert fees are consistent with fees awarded to radiologists by this Program. *See e.g., Estate of Jeter v. Sec'y of Health & Human Servs.*, No. 18-1649V, 2023 WL 2751603 (Fed. Cl. Spec. Mast. Apr. 3, 2023).

I have determined both Dr. Lee and Dr. Bankston have reasonable expert fees of $500.00 total for a consultation fee, and $400.00 total for a consultation fee respectively, considering their respective education, experience, and information provided. Pet. Ex. C; *Baker*, No. 99-653V, 2005 WL 589431, at *3-5 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).

Further costs include fees incurred when obtaining petitioner's medical records, representing a total of $808.61. Additional costs including a $400.00 filing fee, $9.15 medical research fees, and $142.42 postage fee were also incurred in this case. Pet. Ex. C. (ECF 86). Such costs are routinely reimbursed, and petitioner has provided adequate documentation for those costs, and all appear to be reasonable. *See Constantine v. Sec'y of Health & Human Servs.*, No. 18-1685V, 2022 WL 1862726, at *3 (Fed. Cl. Spec. Mstr. May 6, 2022). Accordingly, petitioner is entitled to full costs in the amount of **$13,008.18**.

| | |
|---|---|
| Dr. David Younger Costs Requested: | $ 10,750.00 |
| Dr. Jong Lee Costs Requested: | $ 500.00 |
| Dr. James Bankston Costs Requested: | $ 400.00 |
| **Expert Costs Awarded:** | **$ 11,650.00** |
| | |
| Medical Record Costs Requested: | $808.61 |
| Court Filing Costs Requested: | $ 400.00 |
| Medical Research Costs Requested: | $ 9.15 |
| Postage Costs Requested: | $140.42 |
| **Additional Costs Awarded:** | **$ 1,358.18** |
| | |
| Total Costs: | **$13,008.18** |

### III. Conclusion

In accordance with the foregoing, Petitioner's motion for attorneys' fees and costs is **GRANTED**. I find that Petitioner is entitled to a reimbursement of attorneys' fees and costs as follows:

| | |
|---|---|
| Attorneys' Fees Requested: | $ 103,152.50 |
| (Reduction of Attorneys' Fees): | -($ 99.50) |
| **Attorneys' Fees Awarded:** | **$ 103,053.00** |
| | |
| Attorneys' Costs Requested: | $ 13,008.18 |

---

[3] The Radiology Clinic, https://www.tuscaloosaradiology.com (last visited June 15, 2023).

| | |
|---|---|
| (Reduction of Attorneys' Costs): | -($0) |
| **Attorneys' Costs Awarded:** | **$ 13,008.18** |
| | |
| Total Attorneys' Fees and Costs: | **$116,061.18** |

**Accordingly, I award the following:**

1) **A lump sum in the amount of $116,061.18, representing reimbursement for Petitioner's attorneys' fees totaling $103,053.00 and costs totaling $13,008.18, in the form of a check payable to Petitioner and his attorney, Mr. M. Clay Ragsdale.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[4] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).